IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

IVY L. ADKINS,

                    Plaintiff,

     vs.

SOCIAL SECURITY
ADMINISTRATION COMMISSIONER,

                    Defendant.

Case No. 2:06-cv-02171-JWS

O R D E R AND OPINION

[RE: Dockets 20 and 22]

        Plaintiff, having exhausted her administrative remedies, filed a Social Security complaint alleging the final decision of the Social Security Commissioner was erroneous as a matter of law and regulation.[1]   Plaintiff filed a Motion for Summary Judgment.[2]   Defendant filed a Cross-motion for Summary Judgment and a Memorandum in Opposition to plaintiff's motion, and Plaintiff responded and replied.[3]

## I.  BACKGROUND

        Plaintiff filed an application for disability insurance benefits on March 13, 2003.[4] Her application and request for reconsideration both were turned down.   Her request for a hearing before an Administrative Law Judge (ALJ) was granted,  and the hearing was held on September 20, 2005.  The following testimony and evidence was presented at the hearing:

[1]Docket 1.

[2]Docket 22.

[3]Docket Nos. 25, 28, 29.

[4]The ALJ noted an application date of May 13(A.R. at 17), but the application is dated March 13 (A.R. at 50).

**1. Plaintiff's own testimony.**

The plaintiff testified that she was a (then) 42 year old woman, living with her 19 year old daughter as well as her 8 year old and 22 month old children.[5]  Her 13 year old son lives with his father.[6]  She also has a 21 year old daughter.[7]  She stated that her last full time job was as a 411 operator in 1999.[8]  Since then, she made some attempts to work part-time, including part-time cleaning and tutoring.[9]  Adkins testified that none of those jobs reached a full time level or lasted over three months.[10]  The ALJ noted that the date last insured for Adkins was December 2001.[11] Adkins testifed that in 2001, she was experiencing muscle pain, bone pain, stress reactions to life situations, and lung problems.[12]  She was treated by Dr. Reeder and Dr. Fower (phonetic), although Dr. Reeder had since retired and records were not obtainable.[13]  Adkins was prescribed Effexor for depression, and was also occasionally given antibiotics, and Celebrex (but she reacted).  She stated that she otherwise just took Advil and Motrin (over-the-counter).[14]  She testified she was also treated for mental problems at that time by Dr. Gillam and Dr. Metallis.[15]  Adkins testified that she had symptoms of depression that included crying, inability to focus, poor choices, trouble sleeping,

---

[5]A.R. at 344-45.

[6]A.R. at 345.

[7]A.R. at 349.

[8]A.R. at 345.

[9]A.R. at 345-46.

[10]A.R. at 346.

[11]A.R. at 346.  In the opinion, the ALJ states that the onset date is June 2001.

[12]*Id.*

[13]A.R. at 346-47.

[14]A.R. at 347.

[15]A.R. at 347-48.

different appetite, tiredness during day, and lack of care for self.[16]  She also stated that her body was in pain and it was difficult to prepare foods as previously.[17]

Adkins testified regarding her activities.  She traveled outside of Arizona several times to Indiana, at least once for a court hearing.[18]  She also testified that she has been attending classes as a student, sometimes full-time.[19]  She did part time cleaning but quit in 2003, and did some college tutoring in 2002 for about 5 hours a week, during a semester "as needed."[20]  She stated she has done no work activity since 2003.[21]  Adkins also testified that she had health insurance at the time of the hearing, and had Mercy Care during her pregnancy, but otherwise did "not visit anyone because [she] didn't have the money or the insurance."[22]

### 2. Vocational Expert Testimony

The ALJ posed a hypothetical to the Vocational Expert ("VE") considering:

"someone with the same age, work experience, educational background . . . . [T]he invidiual could perform no more than a light exertional level, that would be 20 pounds occasionally of lifting, 10 pounds frequently; sit/stand and/or walk six hours in an eight hour day.  There would be occasional bending, climbing, crouching, crawling, kneeling; avoid confrontational roles, and . . . lower stress type work.  If there are production quotas in the job, no high production quotas.  Moderate or lower production quotas would be okay, or jobs without production quotas would be even better."[23]

The VE at first testified that there would be no past work that remains viable.  She also said that there would be no "transferrable skills to any jobs that would remain viable through that

---

[16]A.R. at 348-499.

[17]*Id.*

[18]A.R. at 351-522.

[19]A.R. at 352-53.

[20]A.R. at 353-54.

[21]A.R. at 354.

[22]A.R. at 354-55.

[23]A.R. at 357.

hypothetical."[24]  However, when further questioned, the VE found that a person of the above description could be a receptionist, do general office work, and hold light stock and inventory clerk positions.[25]  However, if the individual would miss four or more days of work per month, could not complete assigned tasks in an eight hour day four or more days per month," then there would be no work available without special accommodation.[26]

### 3.  Other Evidence

In addition to hearing testimony, other evidence was taken from the medical records, reports, and correspondence prepared by Plaintiff's doctors and other health care providers. Plaintiff and other witnesses submitted statements as well.

### 4. ALJ Opinion and Residual Functional Capacity Assessment

The ALJ concluded that Adkins was not disabled because she "retains the residual functional capacity to perform her past relevant work and other work."[27]

The ALJ specifically found that in order to qualify for disability benefits, she must establish disability on or prior to June 30, 2001.[28]  The ALJ noted that he gave Adkins the "benefit of the doubt" on whether the part-time work that occurred after the date of alleged onset was gainful work activity, but found it "significant" that the claimant "performed work activity as well as being a full [*sic*] student during the alleged disability period."[29]

The ALJ found Adkins to have the medically determinable severe impairments of an affective disorder, a history of fibromyalgia, complaints of headaches and fatigue, with signs of possible Sjorgen's syndrome, unconfirmed.[30]  The ALJ found that "[a]s a result of her mental

---

[24]A.R. at 357.

[25]A.R. at 358.

[26]A.R. at 359.

[27]A.R. at 17.

[28]A.R. at 18.

[29]*Id.*

[30]*Id.*, A.R. at 21.

4

impairment, [Adkins] experiences mild restrictions of her activities of daily living, mild-to-moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, and pace."[31]   The ALJ found Adkins experienced one episode of decompensation, of an extended duration, as a result of her mental impairment, and that no C criteria existed.[32]   The ALJ noted the various activities that Adkins participates in, including caring for her children, fixing meals, talking on the phone, reading, sewing, driving, running errands, and attending Boy Scout meetings.   He noted that she has taken college classes, including on a full time basis, and worked part-time since onset.[33]

The ALJ found Adkins impairments severe but not enough to meet or equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.[34]   Next, the ALJ looked at Adkins' residual functional capacity.   He found that she retained the capacity to perform light work activity.[35]   He found that she could "lift and carry ten pounds frequently and twenty pounds occasionally, and sit, stand, and walk for six hours a day, and no more than occasionally climb, bend, crouch, crawl, or kneel."[36]   He found that she "cannot maintain confrontational roles in the workplace and requires no more than low-stress work with low production quotas."[37]   The ALJ did not accept Adkins "allegations regarding her subjective complaints to the extent alleged."[38]   He also found that the medical record failed to establish

---

[31]A.R. at 18.

[32]*Id.*

[33]*Id.*

[34]A.R. at 19.

[35]*Id.*

[36]*Id.*

[37]*Id.*

[38]*Id.*

disability on or before her date last insured, June 30, 2001.[39]  The ALJ notes that Adkins was rear-ended in 2000, but that the resulting pain appears to have been "much improved with therapy."[40]

The ALJ found various factors indicated that Adkins' ailments were not as severe as alleged. The ALJ noted that Adkins only takes Advil for her pain, and that "[t]he fact that she does not require stronger pain medications indicates her pain is not as disabling as alleged."[41]  Further, he found that Adkins daily functioning as she reported it "demonstrates she is capable of greater levels of activity than alleged."[42]  He noted that Adkins has gone to college full-time since the alleged onset date, stopping only to have her last baby in November 2003, and returning after that.[43]  He noted that Adkins can drive, has traveled to Indiana several times, and has two small children that she cares for.[44]  The ALJ found that her mental symptoms were not as severe as alleged according to her Global Assessment of Functioning scores, which he found indicate no more than mild to moderate symptoms.[45]  The ALJ states that while Adkins had a score of 50 in August 2000, her medical notes show that by February 2001 Adkins had made "significant progress" resolving past issues, and was working part-time and attending college full-time, indicating that her mental limitations were not serious.[46]

The ALJ also considered third party statements of Adkins' friends and relatives, but did not "assign signficant weight to these third party statements because they are not supported by objective medical signs and laboratory findings of record," and that they fail to disclose the extensive daily

---

[39]*Id.*

[40]*Id.*

[41]*Id.*

[42]A.R. at 20.

[43]A.R. at 20.

[44]A.R. at 20.

[45]A.R. at 20.

[46]A.R. at 20.

activities such as "her ability to handle college classes."[47]  The ALJ noted that he considered the State agency reviewing physician opinions "who opined the claimant is not disabled,"[48] and gave the opinions "moderate weight."[49]  The record, however, shows that the reviewing physician made no such finding, instead finding there was not enough information "to permit a defensible decision."[50]

The ALJ found that based on the VE testimony, Adkins could perform her past relevant work as a receptionist.[51]  He found she also has transferable skills to sedentary general office clerk jobs.[52]

### 5.  The motions at Dockets 22 and 25

Plaintiff seeks judicial review of the ALJ's findings pursuant to 42 U.S.C. § 405(g) of the Social Security Act, and has moved for summary judgment.  The Plaintiff requests that the Court reverse and remand for benefits, or in the alternative, for a new hearing, arguing that defendant failed to consider Adkins' brief to the Appeals Council, that the ALJ improperly ignored treating physician opinions, failed to consider all evidence of Adkins' mental impairments,  failed to consider the nature of fibromyalgia, failed to consider Adkins' obesity, wrongly rejected Adkins' testimony, and the testimony of other witnesses.

Defendant Social Security Commissioner opposes the motion for summary judgment, and cross-moves to affirm the ALJ decision, arguing the denial of Disability Insurance Benefits and SSI Disability Benefits is supported by substantial evidence and free of legal error.

---

[47]A.R. at 20.

[48]A.R. at 20.

[49]A.R. at 20.

[50]A.R. at 211.

[51]A.R. at 20.

[52]A.R. at 20-21.

## II.  STANDARD OF REVIEW

The findings of the ALJ / Commissioner of Social Security regarding any fact, if supported by substantial evidence, shall be conclusive.[53]  A decision to deny benefits will not be overturned unless it either is not supported by substantial evidence, or is based upon legal error.[54] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[55]  Such evidence must be "more than a mere scintilla," but also "less than a preponderance."[56] In making its determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the Commissioner's conclusion.[57]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[58]

The Social Security Act ("the Act") provides for payment of disability insurance benefits (DIB) to people who have contributed to the Social Security program and who suffer from a physical or mental disability.[59]  In addition, under the Act, supplemental security income benefits (SSI) may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.[60]  Disability is defined in the Social Security Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

---

[53]*See* 42 U.S.C. §405(g).

[54]*Matney on Behalf of Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[55]*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

[56]*Richardson,* 402 U.S. at 401;  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975).

[57]*Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).

[58]*Gallant v. Heckler,* 753 F.2d 1450, 1452-53 (9th Cir. 1984).

[59]42 U.S.C. § 423(a)(1).

[60]42 U.S.C. § 1382(a).

which has lasted or can be expected to last for a continuous period of not less than 12 months.[61]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[62]

In evaluating disability claims, the Secretary has established a five step process for determining disability. The Code of Federal Regulations explains:

> The sequential evaluation process is a series of five "steps" that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.[63]

The five steps are as follows:

<u>Step 1</u>. Determine whether the claimant is involved in "substantial gainful activity." If so, disability status is denied.[64] If not, the decision maker proceeds to Step 2.

<u>Step 2</u>. Determine whether the claimant has a medically severe impairment or combination of impairments.[65] A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities, and does not consider age, education or work experience.[66] If the claimant does not have a severe impairment or combination of impairments that satisfies the duration

---

[61] 42 U.S.C. § 423(d)(1)(A).

[62] 42 U.S.C. § 423(d)(2)(A).

[63] 20 C.F.R. §§ 404.1520(4), 416.920(4) (2008).

[64] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2008).

[65] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2008).

[66] 20 C.F.R. § 416.920(c).

requirement in 20 C.F.R. § 416.909, the disability claim is denied at this step.  If, on the other hand, it is found to be severe, the decision maker goes on to the third step.

Step 3.  Determine whether the impairment is the equivalent of a number of listed impairments that are so severe as to preclude substantial gainful activity.[67]  If the impairment is the equivalent of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, App. 1 and meets the duration requirement, the claimant is conclusively presumed to be disabled.  If not, the evaluation goes on to the fourth step.

Step 4.  Determine whether the impairment prevents the claimant from performing work performed in the past.  At this point the analysis considers the claimant's residual functional capacity and past relevant work.  If the claimant can still do his or her past relevant work, the claimant is deemed not to be disabled.  If the claimant cannot perform past relevant work,  the evaluation process moves to the fifth and final step.[68]

Step 5.  Determine whether the claimant is able to perform other work in the national economy in view of his or her age, education, and work experience, and in light of the residual functional capacity.  If so, the claimant is not disabled.  If not, the claimant is considered disabled.[69]

Claimant bears the burden of proof at steps one through four.[70]  The burden shifts to the Commissioner at step five.[71]  The Commissioner can meet this burden "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[72]

---

[67]20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 CFR pt. 404, subpt. P, App. 1 (2008).

[68]20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2008).

[69]20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2008).

[70]*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[71]*Id.*

[72]*Id.* at 1099.

## III.  DISCUSSION

### 1.  *Appeals Council Brief*

Plaintiff argues that implicit in this Court's order at docket 18 directing the filing of plaintiff's brief to the Appeals Council was a directive to the Council to consider the brief.  Such a directive was not requested, and was not part of the order at docket 18.  Failure to consider a brief submitted to the Appeals Council is not necessarily harmless error, but it creates no problem here, because the government concedes that this court may consider any arguments made in the brief to the Appeals Council in its review of the ALJ decision.

### 2.  *Plaintiff's Credibility*

"Once a claimant submits objective medical evidence establishing an impairment that could reasonably be expected to cause *some* pain, it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings."[73]  Instead, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."[74]  "Factors that an ALJ may consider in weighing a claimant's credibility regarding the severity of her symptoms  include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'"[75]

Here, the ALJ found that the medical evidence showed Adkins had severe impairments including fibromyalgia, complaints of headaches and fatigue, with signs of possible Sjorgen's syndrome,  and an affective disorder.[76]  As medical evidence established impairments that could reasonably be expected to cause some pain, and as the ALJ did not identify any affirmative evidence

---

[73]*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) (internal quotations omitted).

[74]*Smolen v. Chater*,  80 F.3d 1273, 1284 (9th Cir. 1996).

[75]*Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (quoting from *Fair v. Bowen* at 885 F.2d 603).

[76]A.R. at 18, 21.

11

that Adkins is a malingerer, the ALJ's reasons for rejecting Adkins' testimony must be "clear and convincing."[77]  The ALJ must provide "specific, cogent reasons for the disbelief."[78]

The ALJ stated that he found the fact that Adkins did not require stronger pain medication than Advil to indicate her pain was not as disabling as alleged.[79]  However, it is noted numerous times in the record that Adkins did not always have health insurance during the time surrounding and after the alleged onset.[80]  An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment" without considering explanations provided by the applicant or information in the case record "that may explain infrequent or irregular medical visits or failure to seek medical treatment  including inability to pay."[81]  In addition, in considering pain testimony, the ALJ appears to primarily consider Adkins' underlying back injuries sustained during a car accident in 2000.[82]  Adkins does not allege disability based on pain from that incident, or mention sustained pain deriving from the incident in her testimony.[83]

The ALJ also found Adkins' daily functioning and activities demonstrated that she is capable of greater levels of activity than alleged.  He cites to the fact that Adkins was taking a full-time college course load, that she drove her car, traveled to Indiana several times, and provided

---

[77]*Smolen* at 80 F.3d 1283-4.

[78]*Orn*, 495 F.2d at 635 (internal quotations omitted).

[79]A.R. at 19.

[80]A.R. at 59 (insurance ran out), 62 (Adkins states cannot afford Effexor), 94 (Adkins states cannot afford meds other than tylenol), 293 (medical record where it is noted Adkins cannot afford insurance for medication), A.R. at 354 (testified at hearing that she was off insurance during some of the time and except for the time she had "Mercy Care" for her pregnancy, she "really did not" visit anybody because she lacked the money and the insurance).

[81]*Orn v. Astrue*,  495 F.3d 625, 638 (9th Cir. 2007) (internal quotations omitted).

[82]A.R. at 19.

[83]A.R. at 57, 346, 347.

regular care for her children.[84]  He found her daily activities also indicated her mental limitations were "not serious."[85]  The Ninth Circuit "'has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability.'"[86]  An applicant need not be 'utterly incapacitated to be eligible for benefits," and "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."[87]  Some of the activities described by the ALJ are not necessarily transferable to the more grueling environment of the workplace. For instance, Adkins stated on her activities questionnaire that "[w]e work together cooking and preparing meals," and that usually she "cannot complete meals" because she is "hurting so much in back, hands and arms."[88]  Similarly, the fact that Adkins has traveled a few times to Indiana does not necessarily indicate that she could sustain the concentration necessary for gainful employment.  The ALJ found Adkins part time work cleaning and tutoring since her alleged onset date also indicated that her activities were not as restricted as alleged.  However, Adkins indicated that neither of those jobs reached a full time level or lasted over three months.[89]

The court agrees with the ALJ that the fact that Adkins has been able to attend college, often full-time, since her alleged onset date [90] is an indication that Adkins is likely capable of spending "a substantial part of [her] day engaged in pursuits involving the performance of physical functions

---

[84]A.R. at 20.

[85]A.R. at 20.

[86]*Orn v. Astrue*,  495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001)).

[87] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[88]A.R. at 95.

[89]A.R. at 346.

[90]A.R. at 18, 20.

13

that are transferable to a work setting."[91]   Unfortunately, the ALJ did not develop the record as to what amount of exertion, time, and concentration carrying a full course-load entailed for plaintiff.[92] There are at least two indications in the record that Adkins was experiencing trouble with her course-work.[93]   Because the court will remand  this case to the ALJ for consideration of obesity, the ALJ should also reassess the credibility determination in light of this court's opinion.

### 3. *Credibility of Lay Witnesses*

Adkins also contends that the ALJ did not provide reasons germane to each witness before rejecting their statements.  Pursuant to 20 C.F.R. § 416.913(d)(4), an ALJ may use evidence from non-medical sources such as a friend or spouse.  An ALJ can reject testimony of lay witnesses if he gives "reasons germane to each witness" whose testimony he rejects.[94]   Here, the ALJ "did not assign significant weight" to the third party statements of Paige Yank and John Campell because the statements were "not supported by objective medical signs and laboratory findings," and they failed to "disclose [Adkins'] extensive daily activities," including Adkins' ability to handle college classes.[95]   These reasons are not germane to the witnesses whose testimony was rejected.  In addition, Paige Yank specifically *does* mention Adkins' ability to handle college classes, stating that Adkins has poor memory and concentration and had recently received an "F" in a class.[96]   The ALJ improperly rejected lay witness testimony, and it should be credited on remand.

---

[91]*Orn v. Astrue*,  495 F.3d 625, 639 (9th Cir. 2007) (internal quotations omitted).  *See Selandia v. Chater*, 110 F.3d 70, 1997 WL 135821, *2 (1997) (upholding ALJ credibility determination based in part on ability to attend college classes and to do homework).

[92]It could be that educational pursuits were compatible with Adkins' symptoms, as in *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

[93]A.R. at 82 (Third Party Function report of Paige Yank stating that Adkins "used to be straight A student and has actually received an F, memory + concentration- very poor, forgets a lot."); A.R. at 57 (Adkins stating that she is not able to keep full attention as a student and tutor).

[94]*Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993).

[95]A.R. at 20.

[96]A.R. at 82.

14

### 4. Opinions on Ability to Work

Adkins argues that the ALJ erred by "failing to consider or evaluate the opinions of Adkins' treating physicians," and by providing no reasons for "implicitly rejecting the opinions of Dr. Gillum and Dr. Metellus, as [the ALJ] never mentioned them."[97]

#### Dr. Gillum

Plaintiff argues that Dr. Gillum's opinions were either not considered or considered and silently rejected, as the ALJ did not mention Dr. Gillum's letter/report opining that "[d]ue to the extent of her problems, Ms. Adkins is considered permanently disabled."[98]  The ALJ did however specifically reference Dr. Gillum and his Global Assessment of Functioning ("GAF") assessments,[99] indicating he considered at least portions of the medical evidence from Dr. Gillum.  Plaintiff does not cite caselaw requiring that an ALJ discuss every portion of the medical records,[100] although in order to reject even a contradicted treating physician's opinion, the ALJ must present "specific and legitimate reasons" supported by substantial evidence for doing so.[101]  Because the ALJ here did not do so, he could not reject the opinion presented in Dr. Gillum's report.  On remand, the opinion of Dr. Gillum should be considered.  However, even if a medical opinion is not rejected, an ALJ is still not "bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability."[102]

---

[97]Doc. 24 at 4-5.

[98]Doc. 24 at 8, A.R. at 243.

[99]A.R. at 20.

[100]The Ninth Circuit has found that the Secretary, "must make fairly detailed findings to permit courts to review these decisions intelligently."  *Vincent v. Heckler,* 739 F.2d 1393, 1394 (9th Cir. 1984).  However, the Secretary "need not discuss *all* evidence presented to her," but "[r]ather, she must explain why 'significant probative evidence has been rejected.'"*Id.* at 1394-95.

[101]*Orn v. Astrue*, 495 F.3d 625, 632 9th Cir. 2007).

[102]*Reddik v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal quotations omitted).

### Dr. Metellus

Similarly, the ALJ did not explicitly reject the medical records and opinions of Dr. Metellus, and therefore Dr. Meteluus' opinion must be considered.  The government argues that the Mental Impairment Report of Dr. Metallus did not relate to the period at issue, and therefore "lacked probative value."[103]  However, even though the report did not purport to include a retrospective opinion, it still could be probative.  "[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition."[104]

### State Agency

Adkins argues that the ALJ improperly evaluated the opinion of the State agency reviewing physicians.  This court agrees.  The ALJ found that the state physicians "opined the claimant is not disabled."[105]  However, the review form that the ALJ cites to is checked "insufficient evidence," and the consultant noted "[t]here is not enough information between AOD and DLI to permit a defensible decision."[106]  The reviewing physician chose not to give an opinion due to a lack of evidence, but the ALJ incorrectly found that he opined that Adkins was not disabled.

### Other Medical Evidence of Adkins Mental Health Treatment

Plaintiff alleges that the ALJ also incorrectly ignored other evidence regarding Adkins' mental impairments.  Plaintiff points out that the ALJ "did not mention, consider or evaluate the details of Adkins' mental health treatment records by her other providers," or "acknowledge the diagnoses of depression by Adkins' primary care and evaluating physicians.[107]  The ALJ did not necessarily ignore such evidence.  The ALJ noted that Dr. Bennett examined Adkins and advised, "Trazadone in an effort to improve her sleep, and try and lower her stress levels and depression."[108]

---

[103]Doc. 27 at 5.

[104]*Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).

[105]A.R. at 20.

[106]A.R. at 199, 211.

[107]Doc. 24 at 12.

[108]A.R. at 19.

This indicates that the ALJ was aware of evidence from other medical sources regarding Adkins' mental impairments.

### 6. *Consideration of the Nature of Fibromyalgia*

The plaintiff argues that the ALJ failed to consider the impact of fibromyalgia in determining Adkins' residual functional capacity.  However, the ALJ mentioned symptoms of Adkins' fibromyalgia in his opinion, including pain, sleep interruption, and fatigue.[109]  The ALJ considered Adkins symptoms of fibromyalgia in his opinion, and listed it as a severe impairment.  Therefore, there is no reason to assume he did not include considerations of it in his RFC assessment.  On remand, the ALJ must again consider fibromyalgia symptoms in his RFC assessment.

### 7. *Consideration of Obesity*

Adkins argues that the ALJ erred by failing to take Adkins' obesity into consideration.  Medical records indicate that Adkins was 5' 8'' and 280 pounds in September 1999;[110] in November 2001, Adkins weighed 279.5 pounds;[111] in January 2002, Adkins weighed 255 pounds; and as of July 2005, Adkins weighed 310 pounds.[112]  Her weight and the fact that she was obese were both noted in her medical records.[113]  The government argues that although the ALJ did not "specifically address Plaintiff's obesity, an arguable deficiency in opinion writing is not a sufficient reason" to set aside an administrative finding where the deficiency would not affect the outcome of the case.[114]

The Ninth Circuit has stated that because "obesity is not a separately listed impairment, a

---

[109]A.R. at 18, 19, 20.

[110]A.R. at 321.

[111]A.R. at 118.

[112]A.R. at 113, A.R. at 225.

[113]*e.g.* A.R. at 113, 116, 333.

[114]Doc. 27 at 7-8.

claimant will be deemed to meet the requirements if there is an impairment that, in combination with obesity, meets the requirements of a listing."[115]  According to Social Security Ruling 02-1p.

> "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders."

Here, the effect of obesity on Adkins' severe impairments, including fibromyalgia and fatigue, is not discussed by the ALJ.  Nor did the ALJ explicitly consider whether Adkins' obesity affected her Residual Functional Capacity ("RFC") as provided by SSR 02-1.[116]

In *Celaya v. Halter*, the Ninth Circuit found that where the report of symptoms "implicitly" raised obesity as a disabling factbor, where it was clear from the record that obesity was at least close to listing criterion of the time and could exacerbate reported illnesses, and where the claimant was pro se, the ALJ's observation of claimant and the record "should have alerted him to the need to develop the record in respect to [claimant's] obesity."[117]  Even where a claimant is represented, an ALJ has the "special duty to fully and fairly develop the record," which some district courts have extended to development of the record regarding obesity.[118]

A court need not always remand where an ALJ has not explicitly considered obesity at steps two and three.  In *Burch v. Barnhart*,[119] the court found the ALJ did not commit reversible error by not listing Burch's obesity as a severe impairment in step two or considering Burch's obesity in determining if impairments met or equaled a listing impairment, as Burch did not "specify which

---

[115]*Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (internal quotations omitted).

[116]Social Security Ruling SSR 02-1p, 2000 WL 628049, *6 Titles II and XVI: Evaluation of Obesity, Sept. 12, 2002, *Burch*, 400 F.3d at 683 (noting that "[a]ccording to the Social Security Rules, in evaluating obesity to determine a claimant's RFC, the ALJ's assessment 'must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting," and that "[a]s with other impairments, the ALJ should explain how he determined whether obesity caused any physical or mental impairments").

[117]*Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003).

[118]*Celaya*, 332 F.3d at 1183; *Stack v. Barnhart*, 327 F.Supp.2d 1175, 1178  (2004) (even though plaintiff was represented, ALJ had duty to develop the record with respect to obesity).

[119]400 F.3d 676 (9th Cir. 2005).

listing she believes she meets or equals."[120]  The ALJ in *Burch* did, however, explicitly consider obesity in the Residual Functional Capacity assessment.[121]

Here, weighing against remand for further consideration of obesity is the fact that Adkins was represented by counsel at the hearing and the fact that no testimony or evidence shows explicitly how her weight affects her impairments and her RFC.  Although obesity is mentioned in her medical records, the medical record is otherwise "silent as to whether and how claimant's obesity might have exacerbated her condition."[122]  Weighing in favor of remand is the fact that the treating doctor mentioned Adkins' obesity, and the fact that her obesity appears to be at the "extreme" level.[123]  This court finds that it is best to remand for a determination by the ALJ (with further development of the record as is necessary) regarding the effects of obesity.

**8.  *Remand***

A decision of the Secretary to deny benefits will not be overturned unless it either is not supported by substantial evidence, or is based upon legal error.  "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Here, the shortcomings in the ALJ's evaluation of the evidence do not allow the court to find that the decision to deny benefits is supported by substantial evidence.

A district court should "credit evidence rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a

---

[120]*Id.* at 683.

[121]*Id.*   Similarly, in *Bowser v. Commissioner of Social Security*,121 Fed.Appx. 231 (9th Cir. 2004), the court found that the ALJ did not err where he never addressed "Claimant's purported obesity."  *Id.* at 236.  Only one doctor observed that Bowser was moderately obese, and there was no indication in the record that excess weight caused the symptoms in the record.  *Id.*  Claimant herself did not raise the issue of obesity in the hearing.  The court held that "[t]he AlJ did not err in failing to account for the effects of a medical impairment- obesity- that Claimant never raised before the ALJ and is not readily apparent from the record."  *Id.*

[122]*Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

[123]SS Ruling 02-1.

determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."[124]  These criteria are not met here.

Given the need for further development of the record and appropriate consideration of the evidence discussed above, a remand for further proceedings is appropriate.

## IV. CONCLUSION

For the reasons above the motion at docket 22 is **GRANTED** as follows:this matter is **REMANDED** for further proceedings consistent with this Order and Opinion.  The motion at docket 25 is **DENIED**.

DATED this 3rd day of September  2008.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[124]*Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).